### HANCOCK *et al.* v. KING.

1. An assignment to a widow of a year's support in "four hundred and fifty acres of land, more or less, including homestead,—$450.00," is not necessarily void on account of the vagueness of the description. Extrinsic evidence is receivable to apply the description to its subject-matter. Where it appears from extrinsic evidence that the husband of the widow, at the time of his death, owned two non-contiguous tracts of land, upon one of which he continuously lived for many years prior to his death, and which was known as his "home place" and was estimated to contain about 450 acres, and that the widow, immediately after the judgment assigning her a year's support, took possession of the land, and has continuously remained in possession, claiming it under the judgment of year's support, these facts are sufficient to apply the judgment of year's support to its subject-matter, and relieve it of any apparent uncertainty.
2. One invoking the conduct of another as constituting an estoppel in pais must show that he has acted thereon to his detriment, or has been hurt thereby, before he can successfully urge such conduct as an estoppel in pais.

Submitted June 15, 1909.—Decided January 12, 1910.

Interpleader.    Before Judge Hammond.    Richmond superior court.    October 30, 1908.

*Henry C. Roney,* for plaintiffs in error.

*C. E. Dunbar* and *William H. Fleming,* contra.

EVANS, P. J.    William H. Fleming brought his petition for interpleader against the widow and children of the late Allen King. It appeared that Allen King died intestate in the year 1891, leaving as his heirs at law a widow, Lavinia King, and eight children.    One of his sons duly administered on his estate, and in the inventory of

the estate it appeared that the intestate died seized and possessed of "400 acres of land—home place, and 340 acres of unimproved land." The widow applied for and had set apart a year's support in 1894, and among other matters the following land was set apart to her, as described in the return of the appraisers: "Four hundred and fifty acres of land, more or less, including homestead,—$450.00." Immediately after the assignment of the year's support the widow went into possession of the home place, and in January, 1907, conveyed it to one Hunter, who, not considering the description in the return of the appraisers sufficiently specific, requested that the children should join their mother in the conveyance. They complied with this request and signed the deed with their mother. The funds arising from the sale of the land, after the deduction of the necessary expenses, amount to a certain sum; and some of the children have demanded of the plaintiff that he turn over to them their respective shares as heirs at law of the estate of their deceased father. The widow, on the other hand, has demanded of plaintiff that the entire fund be turned over to her; and the direction of the court is prayed. The widow and the children filed their answers setting up their respective contentions. After the submission of the evidence, the court directed a verdict awarding the fund to Lavinia King, the widow of Allen King. Sarah Hancock and others sued out a writ of error.

1. The principal question in the case is the sufficiency of the description of the land claimed to have been set apart to the widow as a year's support. It is a well-established rule that a judgment setting apart a year's support being in effect a conveyance to the widow of an interest in her deceased husband's property, the description of the property must be such as to render it capable of identification; and if the description is so vague and indefinite that the property can not be identified, the title of the estate is not divested by the judgment setting apart a year's support: *McSwain* v. *Ricketson*, 129 *Ga.* 176 (58 S. E. 655); *Hawes* v. *Elam*, 131 *Ga.* 323 (62 S. E. 227). It is not necessary that the descriptive words be so elaborate as, of themselves, to identify the tract of land, if the description given is of such a character as that by the application of the maxim, "Id certum est quod certum reddi potest," the particular lands may be located by extrinsic evidence. As was said in *Crawford* v. *Verner*, 122 *Ga.* 816 (50 S. E. 958), "If the tract be

described as being known by a given name, or if reference is made to a more particular description in another deed or survey and plat, the instrument is prima facie good as a conveyance of title, and extrinsic evidence is admissible for the purpose of applying it to its subject-matter, if there is in point of fact a tract of land which corresponds to the description given in the deed." It appeared from the evidence that the decedent, under whom the parties claimed title, owned at the time of his death two tracts of land. In the inventory of the estate the administrator described the two tracts as "400 acres of land,—home place, and 340 acres of unimproved land." It appeared from the evidence that the home place was purchased by the decedent in the year 1850, and that he had continuously resided thereon to the time of his death in 1894. This was his home, or homestead, and was about a mile distant from the tract of unimproved land. The appraisers set apart: "Four hundred and fifty acres of land, more or less, including homestead, —$450.00." The widow immediately went into possession of the land and remained in actual possession for fourteen years, until she bargained it to Hunter, when it was surveyed and found to contain 537 acres. The area of the land as stated in the inventory, and in the judgment assigning the year's support, apparently was only an estimate of the quantity. The word "homestead" was manifestly used by the appraisers, not in its legal, technical sense, but rather in its popular sense as a synonym of "the home place" of the decedent. The appraisers appointed to assign the year's support were not undertaking to carve out of the estate of the intestate a homestead which would be exempt from sale by the intestate's creditors during the life of the widow and the minority of the children, but they were undertaking to assign a statutory year's support. The added words of "more or less" to the number of acres of the tract set aside indicate that no precise number of acres were intended, but that the statement of the quantity was given as descriptive of the land assigned. When the homestead of a landowner is alluded to in common speech, it is never understood to be limited to the dwelling-house or other houses within the curtilage, but embraces the tract of land on which is located the dwelling and tributary improvements. The language employed by the appraisers is the equivalent of saying that they assigned as a year's support to the widow the home place of the decedent, containing 450 acres, more

or less.　If this be the true import of the words used in assigning the year's support (and we think they are), then, clearly, the assignment is not void for vagueness or uncertainty.　*Sizemore* v. *Willis,* 130 *Ga.* 666 (61 S. E. 536).

2.　The only other point in the case is the claim of the plaintiffs in error that when the widow yielded to the demand of the purchaser that her children should join in the conveyance, she was estopped by her conduct from denying that the title was not in her children and herself as joint heirs at law of her deceased husband. There was no estoppel in the case.　An essential element in every estoppel in pais is that the person invoking the estoppel has acted thereon to his injury and hurt.　Civil Code, § 5150.　It does not appear from the record that the children are in any worse plight after joining in the conveyance with their mother than they were before.　If the assignment of the year's support was valid, the widow had the right to sell it, and to convey to the purchaser all the title which her late husband had in the land.　*Sizemore* v. *Willis,* supra.　The children have not lost or surrendered any right, nor have they suffered any detriment.

*Judgment affirmed.　All the Justices concur.*